Scott, J.
The bailment out of which the action in' the court below arose, was what is known as a deposit. The property bailed was delivered to the defendants to be kept *401 without fee or reward, and returned to the plaintiff, by whom the bailment was made, on demand. Such a bailment being for the sole benefit of the bailor, the law holds-the bailee liable only for losses attributable to his gross negligence. It was so held by Lord Holt, in the celebrated case of Coggs v. Bernard, 2 Ld. Raym. 715; 1 Smith’s L. C. 369; and with this doctrine all the subsequent text-books on the subject of bailments agree.
But what constitutes gross negligence can not be determined by any rule which will furnish a reliable test in all' cases. It must be determined as a question of fact in each particular case by the jury, under proper instructions from the court. The degree of care due from the depositary depends-upon circumstances, such as the nature and quality of the-goods bailed, and the character and' customs of the place-where they are to be kept. The duty devolved upon the bailee by a mere deposit is thus stated generally by Justice-Blackstone: “He is to keep the goods as his own, and if robbed of them, or they are stolen without his fault, he is-not responsible. But he must observe a reasonable degree-of care, as in other cases, with reference to the nature-of the goods, and the particular circumstances of the bailment.” 2 Black. Com. 453. "We regard this as a correct and brief summary of the duty of such a bailee. He is bound, as are the parties to all contracts, to the exercise of good faith; and if he keeps the goods intrusted to him with less care than he keeps his own, of the same kind, this is-a circumstance from which a jury might well infer a want of good faith; but the keeping of them as his own, is, as was said by Lord Holt, an argument of his honesty. And the-'Roman or civil law required nothing more. But it has been, justly held, both in this country and in England, that it will not exempt the depositary from liability for gross negl i - gence, that he has kept the deposit in the same place or with the same care that he has kept his own property. In the case of Doorman v. Jenkins, 2 Adolph. & Ellis, 256, Chief Justice Denman told the jury that it did not follow *402 from the defendant having lost his own money at the same time as the plaintiff’s, that he had taken such care as a reasonable man would ordinarily take of his own, and that the fact relied on was no answer to the action, if the jury believed that the loss had occurred from gross negligence. That was a case in which a coffee-house keeper received a deposit of money, and placed it in his cash-box, in his taproom, in which he kept his own cash, and both were stolen together. A verdict was found for the plaintiff, and the instruction was held right by the whole court. See also Story on Bailm. 58.
The term gross negligence is scarcely susceptible of legal definition; but there is a degree of care (indefinitely varied by the nature of the deposit and the circumstances of the case), which the depositor has a right to expect from the depositary, the want of which is so designated, and will render the depositary liable if a loss results therefrom.
This we think is so, irrespective of any actual fraud or intentional bad faith. It is a breach of the contract or obligation, which the law implies from the bailment, in the absence of an express agreement to the contrary.
The errors assigned in this case are: 1. That the court refused to give to the jury the instructions asked for hy counsel for plaintiff, except in so far as the same are embraced in the general charge given by the court; and, 2. That the court erred in the instructions given to the jury.
The first four instructions asked for, are as follows :
1. A banker, or other person, who, for the accommodation of another, and without reward, receives United States bonds on special deposit, is bound to take the same care of them that he usually takes of his own. If he does not take the same care of them that he usually does of his own, and they are stolen, he is liable to the depositor for the value of the bonds, at the time of the theft, with interest.
2. A banker, or other person, who receives United States "bonds on special deposit, to be kept without reward, is *403 "bound to take the same care of them that he usually bestows on property of that kind for others without reward; and if he does not take the same care of them that he usually does of others, and they are stolen, he is liable to the owner for their value at the time of the theft, with interest.
3. Notwithstanding a bailee of money or goods takes the same care of them that he does of his own, still if he did not take that care of the money or goods that bailees without reward usually take of such property, or that he himself usually took of such property of others, under such circumstances, he would be liable to the owner for the value of the property at the time of the theft, with interest.
4. If the defendants knew, or had reasonable grounds to ■presume, that the tin box contained United States bonds, ^although they did not have the key to the box, they would be bound to take the same care of it they usually took of like bonds of others on special deposit with them without reward, or which they usually took of their own, and if they did not take this care, and loss ensued, they would be liable.
These several instructions were substantially given to the jury in the general charge of the court, with a single modification, which we think was entirely proper. The jury were instructed to take into consideration the character of the package in which the plaintiff’s bonds were contained; that the thing deposited was a tin box, with its contents; that this box was fastened with a padlock, of which the plaintiff retained the key, so that defendants had no power to care for the bonds any further than they could reasonably care for such a box. The evidence in the case tended to show that the defendants kept their own bonds of the same kind, together with similar bonds belonging to other depositors, in a small burglar-proof safe. But these bonds were all in paper envelopes, which were compressible ; the tin box was incompressible. It might be convenient, and therefore reasonable, that valuable papers *404 in envelopes should be kept in the small burglar-proof, whilst it might be very inconvenient, and therefore not to-be expected, that boxes such as that in which plaintiff's bonds were placed by her should be kept in the same place. No evidence was offered on the trial,.so far as appears, that the defendants ever kept any boxes containing bonds or other valuables, either of their own or other depositors, in their burglar-proof. On the contrary, the only other depositor of bonds in a box appears to have been a Mr. White, and the evidence offered by the plaintiff herself went to-show that the defendants, at the time of receiving it, informed the depositor that they could not put it in their safe,, and it was accordingly set in the vault, where the plaintiff’s box was placed. But the court clearly instructed the jury, that the defendants “ were bound to place the plaintiff’s box where bankers of common prudence, without hire, would have ordinarily placed it, had it been received by them under similar circumstances.” The court also charged1 the jury, that in the absence of any special agreement on the subject, the defendants were bound to take the same care of the plaintiff’s box containing her bonds as they usually took of their own property of the same kind, kept in similarpackages — that is, in boxes, as the plaintiff’s were; also, that “ they were bound to take the same care of plaintiff’s box that they ordinarily bestowed upon the bonds, of others which were deposited in the same manner that these wereand for a loss resulting from a want of such care, in either of these respects, the jury were told that defendants must be held responsible. The evidence in the case .also tended to show that the plaintiff’s bonds were kept by the defendants in their burglar-proof so long as she-kept them in paper envelopes, and were left in the vault, outside of the burglar-proof, only when she placed them in her mother’s box, which had been deposited .with defendants before they procured a burglar-proof, and had never been kept therein. In this state of the evidence, we think the plaintiff has no right to complain of the instructions given to the jury, which measured the care due from the- *405 -defendants by that ordinarily taken by themselves and other depositaries of common prudence, of the same kind -of property of their own, or of depositors, when inclosed in packages substantially of the same character with the box deposited in this case. It was for the jury, and not for the court, to say whether, in the light of the evidence, the plaintiff’s box, considering its size and character, .should, in the exercise of common prudence, have been kept in the burglar-proof, where property of the same kind, but in packages of a less bulky and cumbersome -character, were usually kept by defendants. We think the court very properly allowed the jury to take the character ■of the package into consideration.
The .next three instructions asked by plaintiff in error -were as follows :
“ 5. The defendants were bound to act in good faith with the plaintiff and her mother, and if the defendants knew, • or had reasonable grounds to presume, that the tin box -contained United States bonds, or other valuables, and they, by any act of theirs, lessened the security of the ■vault against robbery, or believed that it was not secure .against robbery, and to increase the security of their own valuables in the vault against robbery, placed therein a burglar-proof safe for their reception, good faith required them to notify the plaintiff", or the owner of the box, of those facts, and if they did not, and loss ensued, they were liable.
“ 6. Even if there was an agreement with the owner of •the box that it should be kept in the defendants’ vault, yet if the defendants had weakened the security of their vault .■against robbery, or believed that it was not secure against robbery, and to increase the security of their own valuables against robbery, had placed in the vault a burglar-proof safe for their reception; and if they knew, or had reasonable ground to presume, that the tin box contained bonds or other valuables, they would be bound, in the exercise ■of good faith, to notify the owner of the, box, or the person ■who delivered it to them, at any time thereafter, of these *406 facts, and if they did not, they would be liable if loss ensued.
“ 7. If the defendants knew, or had reasonable ground to-presume, that the tin box contained bonds or other valuables, and knew, or found out, that they could not, or would not, keep the box in the safe, to act in good faith they would be bound to notify the owner of the box, or persons who afterward delivered it to them, of that fact, and if they did not and loss ensued, they would be liable.”
These instructions relate solely to the question of good faith. On this subject the court instructed the jury: “ That if the agreement was that the box should be kept in the vault, both parties supposing at the time that the place was a sáfe one, and if afterward the defendants learned that the vault was insecure from any cause, good faith required that the defendants should notify the persons interested in the box of their discovery of the unsafety of the place selected. But if the vault remained as secure, at and after the reception of the burglar-proof safe, and up to the time of the robbery, as it was when the box was deposited, and if the defendants had no reason to believe that either the plaintiff or her mother was deceived in the security of the vault, they were not obliged to notify either the plaintiff or her mother of the procuring of the safe, nor were they obliged to put the box in the safe. They were obliged to notify them if the vault actually became insecure, or if they discovered that it was insecure, and not otherwise; that is, if the parties interested in the box were resting under a delusion, or trusting to a false security, and the defendants-knew it, or had reason to know it, good faith required them to remove that false impression, or be answerable therefor in damages.”
The court also instructed the jury: “ That if the proof shows that the box by agreement was to be kept in the-vault, good faith would require of the defendants that they should exercise the same degree of care in keeping it in the-stipulated place, that would be used by bankers of common prudence under like circumstances They ought not to- *407 have unnecessarily or unduly exposed it. They ought not to have materially diminished the safety and security of the vault; and if they did so, if they took off a door of the vault, and thereby materially diminished its security, the defendants would be responsible for a loss through that carelessness, unless they notified the plaintiff or the owner of the box of the change in the doors. But if you can say that if the door was taken off, it did not materially increase the exposure of the box and its contents, and if you further find that bankers of common prudence, under similar circumstances, in this locality, would have taken off the door as they did, then you ought not to come to the conclusion that they were guilty of bad faith.”
The court also said to the jury: “ If the plaintiff expected that the box would be put in the safe, and the defendants or their cashier knew of her expectations, they ought to have put it there or notified her that they could not do so. But if she had no such expectation, or if they had no reason to believe that she had, they would not be bound to put it there. They were bound to put it where they had reason to believe she expected it to be put.”
These instructions as to good faith were, as we think, all that the plaintiff had a right to ask.
The seventh instruction asked by the plaintiff is based on the idea that if the defendants, after the deposit of the box in question by the plaintiff’s mother, for the greater security of any valuable property of their own, or of depositors, procured a burglar-proof safe of sufficient capacity to contain such property in packages of a particular kind, or without inclosures of any kind, they were bound to procure a safe of sufficient capacity to contain the plaintiff’s property of a similar kind, without regard to the character of the package or inclosure in which it was contained, or else to inform her that they had procured such safe, but could not place her deposit therein. And that a failure to do so would be such a want of good faith as would subject the defendants to liability for the loss of the property deposited, by robbery. We think such a charge *408 was properly refused. If the box was originally deposited whilst defendants had no place of greater security for it than their vault, which both parties supposed to be reasonably secure, and if no substantial change in that security occurred subsequently, and if the defendants discovered no defect in the vault calculated to diminish confidence in it as a place of security, the defendants were under no obligation, as gratuitous bailees, to incur expense in furnishing a place of greater security. If the defendants were keeping their own property of a similar kind 'in the vault, and also that of other depositors, and the place was such as other bankers of ordinary prudence would have placed similar deposits in, the plaintiff had no right, in the absence of a special agreement,' to expect á higher degree of care. She was in no way injured by the fact that defendants subsequently procured a burglar-proof safe for the greater safety of packages of a different kind from hers. Nor did good faith require that she should be notified of that fact, so long as the security which she had ■a right to expect remained undiminished.
The eighth instruction asked was as follows :
“ A party, by his silence, under certain circumstances, may admit the correctness of a statement made to him; thus, if the plaintiff, on the Wednesday after the robbery, ■at her mother’s house, said to Mr. Lodge that she had left her bonds in. his hands for safe-keeping, and expected them to be returned to her, and if Mr. Lodge understood the assertion of the plaintiff, and made no reply, or dissent thereto, this silence would be regarded as an admission of the fact that he knew the bonds had been left with him in the box for safe-keeping.”
This instruction the court refused to give, and the general charge contains no equivalent instruction.
We think there was no error in refusing this instruction. The maxim, “Qui tacet, consentiré videtur,” is always to be applied with caution. Without discussing the subject at length, it is very clear that the silence of a party can never be properly regarded as more than the admission *409 -of the truth of that which is alleged in his hearing. Nor, indeed, can it justify any further inference than that the party who is thus silent had no knowledge at the time in regard to the facts alleged which would justify him in denying the allegations made. If the plaintiff affirmed in the hearing of one of the defendants after the robbery that the box which she had deposited with them contained United States bonds, the silence of such defendant could not imply more than his inability to deny, from his knowledge or information, the fact thus affii-med. The plaintiff had asserted that her box contained bonds; she had not ■asserted that the defendants were apprised of this fact when the deposit was made, or at any time before the robbery. The defendants may have had no reason to doubt the truth of the statement thus made by the plaintiff, and were therefore under no obligation to raise an unpleasant controversy by questioning her veracity. They might very properly remain silent. But the court was asked to say to the jury that this silence of the defendant, Lodge, should be regarded by them as an admission of the fact that ho knew the box deposited with him and his partner contained bonds. No such averment had been made in his hearing. He may have had no information as to the contents of the box until after the robbery; and his silence when tlio actual contents were afterward stated by the plaintiff could not fairly be regarded as an admission of such previous knowledge.
Without affirming that the charge of the court was, in •all respects, unexceptionable, it is sufficient to say that we think the plaintiff in error has no reason to complain of it, ■and that the instructions asked by her counsel were properly refused by the court, except with the modifications or qualifications found in the charge as given.

Judgment affirmed.